IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

WILLIAM GERARD HOH,

                        Plaintiff,

v.                                                        CIVIL ACTION NO. 2:17-cv-01425

STANDARD INSURANCE COMPANY,

                        Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff William Gerard Hoh brings this case against Defendant Standard Insurance Company ("Standard") alleging two causes of action that arise out of Standard's denial of Plaintiff's claims under both a Group Short Term Disability Insurance Policy ("STD Policy") and Group Long Term Disability Insurance Policy ("LTD Policy"). Standard issued these policies to the West Virginia Public Employees' Insurance Agency ("PEIA") to cover certain state public employees like Plaintiff. Before the Court is Standard's Motion to Dismiss. (ECF No. 5.) For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

*I.  BACKGROUND*

This action arises out of a complaint brought by Plaintiff in the Circuit Court of Kanawha County, West Virginia.[1] (ECF No. 1-1 at 4–10.) According to the complaint, Plaintiff served as

---

[1] The Court notes that Plaintiff filed an Amended Complaint on May 30, 2017, (ECF No. 18), pursuant to this Court's Scheduling Order entered on April 28, 2017, (ECF No. 12). The Amended Complaint, which is nearly identical to the original complaint filed in the Circuit Court of Kanawha County, states that "[t]he only change to the allegations

1

Medical Director of PEIA, where he "performed administrative reviews and issued benefit decisions." (*Id.* at 5 ¶¶ 5–6.) Plaintiff participated in a group disability plan sponsored by PEIA for its employees, and Standard "was delegated authority to decide eligibility for benefits and pay claims for this disability policy." (*Id.* at 5–6 ¶¶ 14–15, 17.) The group disability plan consists of both the STD Policy and LTD Policy, which are attached to the complaint as Exhibits C and D, respectively. (*Id.* at 28–95.) The complaint asserts that under the group disability plan, "a claimant should be found to be disabled if, as a result of physical disease, injury, or mental disorder, he is unable to perform, with reasonable continuity, the material duties of his own occupation." (*Id.* at 6 ¶ 16.)

Plaintiff allegedly began experiencing pain in his arms and legs in 2012 "due to re-tethering of his spinal cord."[2] (*Id.* at 5 ¶ 7.) The complaint states that Plaintiff "ceased work on May 17, 2013[,] due to his back pain, neck pain, headaches, and neuropathy in his upper and lower extremities." (*Id.* ¶ 10.) Plaintiff sought evaluation from numerous doctors and specialists who ultimately diagnosed him with adult-onset tethered cord syndrome and determined that he was unable to continue working. (*Id.* ¶¶ 8–9, 11–13.) He alleges to have filed claim number 00DT9666 with Standard under the STD Policy for short-term disability benefits before becoming

---

below is the addition of Paragraph 43." (ECF No. 18 at 1.) Standard's Motion to Dismiss is premised entirely on the statute of limitations, and the addition of paragraph 43 does not appear to be in response to the Motion to Dismiss nor is it relevant for the analysis contained in this memorandum opinion and order. Thus, the Court will reference and examine the original complaint in resolving the pending Motion to Dismiss.

[2] The Spina Bifida Association provides the following description of spinal cord tethering:

> Tethering of the spinal cord is a condition in which the spinal cord becomes attached to the spinal column via surrounding structures. Normally, the spinal cord hangs loose in the canal, freely moving up and down with growth, bending and stretching. A tethered cord does not move. It is pulled tightly at the end, reducing blood flow to spinal nerves and causing damage to the spinal cord from both the stretching and the decreased blood supply.

Spinal Cord Tethering: A Common Cause of Deterioration in Spina Bifida, Spina Bifida Ass'n (July 2015), http://www.spinabifidaassociation.org/wp-content/uploads/2015/07/Spinal-Cord-Tethering1.pdf.

eligible for long-term benefits and filing claim number 00VU0256 under the LTD Policy. (*Id.* at 6 ¶¶ 18, 20.) The complaint provides that Standard denied Plaintiff both short-term and long-term benefits on May 1, 2014. (*Id.* at 7 ¶ 28.) Plaintiff filed an administrative appeal with Standard in December 2014, and Standard upheld its previous decision on April 10, 2015. (*Id.* ¶¶ 29–30.)

Plaintiff contends that Standard wrongfully denied him short-term and long-term disability benefits that he is still owed and repeatedly erred throughout the claim review process. (*See id.* at 7–8 ¶¶ 31–38.) He claims that Standard's actions and wrongful denial of his claims generate the following two causes of action: 1) common law breach of contract, (*id.* at 8 ¶¶ 39–43), and 2) violation of the West Virginia Unfair Trade Practices Act ("UTPA"), (*id.* at 9 ¶¶ 44–47). Plaintiff seeks several remedies: recovery of past, ongoing, and future disability benefits, punitive damages, attorney's fees and costs, pre- and post-judgment interest, and any other relief deemed appropriate. (*Id.* ¶¶ 1–9.)

After Plaintiff filed his complaint in the Circuit Court of Kanawha County, Standard removed the case to this Court on March 2, 2017, pursuant to 28 U.S.C. § 1332. (ECF No. 1 at 1–2.) Standard filed the pending Motion to Dismiss on March 9, 2017, arguing that both of Plaintiff's claims should be dismissed as time-barred by the applicable statute of limitations. (ECF No. 5.) Plaintiff responded to the motion on March 23, 2017, (ECF No. 8), and Standard filed its reply memorandum in support of its motion on March 30, 2017, (ECF No. 10). The Motion to Dismiss is fully briefed and ripe for adjudication.

## II. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In applying this standard, a court must utilize a two-pronged approach. First, it must separate the legal conclusions in the complaint from the factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.* Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

## III. DISCUSSION

Plaintiff's complaint alleges two claims for relief. Standard attacks both counts in its Motion to Dismiss and argues that the statute of limitations bars them. In deciding a motion to dismiss based on the statute of limitations, the Court should only grant the motion if it clearly

4

appears on the face of the complaint that the plaintiff's claims are time-barred. *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005).

Courts analyzing a West Virginia statute of limitations should conduct a five-step analysis in determining whether a cause of action is barred by the statute of limitations. *See Robinson v. Quicken Loans Inc.*, 988 F. Supp. 2d 615, 625 (S.D. W.Va. 2013) (citing *Dunn v. Rockwell*, 689 S.E.2d 255 (W. Va. 2009)). The Court initially must "identify the applicable statute of limitation for each cause of action." *Dunn*, 689 S.E.2d at 265. Second, the Court "should identify when the requisite elements of the cause of action occurred." *Id.* Further, the Court must decide if the discovery rule should apply, which tolls the statute of limitations "until a claimant knows or by reasonable diligence should know of his claim." *Gaither v. City Hosp., Inc.*, 487 S.E.2d 901, 906 (W. Va. 1997) (syllabus point four). Fourth, if the plaintiff does not benefit from the discovery rule, then the Court must look at "whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action." *See Dunn*, 689 S.E.2d at 265. Lastly, the Court must inquire whether "some other tolling doctrine" affects the statute of limitations period. *See id.*

    *A. Count One: Breach of Contract*

Standard argues in its motion that Plaintiff's breach of contract claim is barred by the three-year contractual limitation on legal actions contained in both the STD Policy and LTD Policy. (*See* ECF No. 6 at 7–8.) The policies limit the commencement of legal actions to three years from "the earlier of the date Proof of Loss was received by Standard or the date Proof of Loss was required to be given." (*Id.* at 8 (citing ECF Nos. 7-1, 7-2).) Because Plaintiff's proof of loss

claim form was submitted to Standard on November 17, 2013, Standard asserts, the period within which he could bring any legal action expired three years later on November 17, 2016. (*Id.*) Thus, Standard argues that Count One is time-barred and should be dismissed with prejudice. (*Id.*)

Plaintiff responds that the contractual limitation within the STD Policy and LTD Policy is unenforceable under W. Va. Code § 33-15-4. (*See* ECF No. 8 at 11 (citing *Caldwell v. Standard Ins. Co.*, No. 2:14–cv–25242, 2015 WL 4727378, at *1 (S.D. W.Va. Aug. 10, 2015).) While Plaintiff discusses two West Virginia statutes from *Caldwell*, he states that only the second is "controlling." (*See id.* at 9–11 (citing W. Va. Code §§ 33-6-14, 33-15-4).) The latter statute specifies that insurance contracts may not include language "less favorable in any respect to the insured" than language provided by the statute, including the statutory provision that states, "[n]o action at law . . . shall be brought to recover on this policy . . . after the expiration of three years after the time written proof of loss is required to be furnished." (*Id.* at 11 (emphasis removed) (quoting W. Va. Code § 33-15-4, 4(k)).) Plaintiff argues that the group disability plan policies at issue allow for an action to accrue on "*the earlier of* the date Standard *received* Proof of Loss and the time within which Proof of Loss is required to be given," which is less favorable to Plaintiff when applied to the facts of his case. (*See id.* (emphasis in original).) Accordingly, Plaintiff argues that the contractual limitation is unenforceable and that West Virginia's ten-year statute of limitations for breach of contract applies to this case. (*See id.* at 12.)

Standard's reply asserts that § 33-15-4(k) does not invalidate the contractual limitation in the group disability plan policies because "the Group Policies' three-year time frame is exactly the three[-]year time frame" in the statute. (*See* ECF No. 10 at 14.) Therefore, Standard argues, the

6

policy language is "no less favorable" to Plaintiff than the statutory requirement. (*See id.*) Standard goes on to argue that Plaintiff's breach of contract claim under the STD Policy, specifically, is time-barred because proof of loss was required "within 90 days after the end of the [thirty-day] Benefit Waiting Period." (*Id.*) Based on Plaintiff's allegation that he ceased work on May 17, 2013, Standard argues that the Benefit Waiting Period under the STD Policy ended thirty days later on June 16, 2013, and that proof of loss was required within ninety days thereafter, or by September 14, 2013. (*Id.* at 15.) Applying the three-year contractual limitation to that accrual date, Standard concludes that Plaintiff's breach of contract claim under the STD policy must have been filed by September 14, 2016. (*See id.*)

The crux of the parties' dispute involves the first step of the *Dunn* analysis—namely, what statute of limitations applies. In Standard's motion, it argues that the contractual limitations provided in both the STD Policy and LTD Policy and attached to the complaint govern this situation to bar Plaintiff's breach of contract claim. (*See* ECF No. 6 at 7–9; *see also* ECF No. 1-1 at 45, 89.) Plaintiff, on the other hand, argues that those contractual limitations are unenforceable under West Virginia law and that, therefore, the State's statutory limitation controlling general breach of contract actions applies. (*See* ECF No. 8 at 9–12.) For the reasons that follow, the Court agrees with Plaintiff that the contractual limitations in the STD Policy and LTD Policy conflict with West Virginia law and cannot apply to Plaintiff's claim but not insofar as Plaintiff argues that West Virginia's general ten-year statute of limitations applies.

A contractual provision "may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations" if the shorter period is reasonable. *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 134 S. Ct. 604,

611 (2013) (quoting *Order of United Commercial Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947)). However, if the contractual limitation provision is unenforceable because it conflicts with state law, then the Court "turns to the law of West Virginia for the applicable limitations period." *See Gillespie v. CUNA Mut. Grp. Long Term Disability Ins. Policy*, No. 2:09–120, 2010 WL 1050286, at *2–4 (S.D. W.Va. Mar. 28, 2010).

West Virginia insurance law specifically enumerates policy provisions required to be included in all accident and sickness insurance policies but provides that "the insurer may, at its option, substitute for one or more of such provisions corresponding provisions of different wording approved by the commissioner which are in each instance not less favorable in any respect to the insured or the beneficiary."[3] W. Va. Code § 33-15-4. At issue here is subsection (k), which states the following required provision:

> Legal Actions: No action at law or in equity shall be brought to recover on this policy prior to the expiration of sixty days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished.

§ 33-15-4(k). Thus, if an insurance contract provision substitutes for the "Legal Actions" provision a corresponding provision of different wording, it will still be valid as long as it is approved by the West Virginia Insurance Commissioner and is not less favorable in any respect to the insured. *See id.*

---

[3] Article sixteen of the West Virginia Code's chapter on insurance relates to Group Accident and Sickness Insurance, such as Standard's group disability plan, and provides a section enumerating required policy provisions. *See* W. Va. Code § 33-16-3. However, the required policy provisions under article fifteen still apply because article sixteen states the following: "No provision relative to notice of proof of loss or the time for paying benefits or the time within which suit may be brought upon the policy shall be less favorable to the insured than would be permitted in the case of an individual policy by the provision set forth in article fifteen of this chapter." § 33-16-3(d).

The contractual limitations provision at issue is identical in both the STD Policy and LTD Policy and reads as follows:

TIME LIMITS ON LEGAL ACTIONS

No action at law or in equity may be brought until 60 days after you have given us Proof of Loss. No such action may be brought more than three years after the earlier of:

1. The date we receive Proof of Loss; and

2. The end of the period within which Proof of Loss is required to be given.

(ECF No. 1-1 at 45, 89.) The questionable language within the contractual provision is that which allows Standard to begin running the limitations clock on the date it receives proof of loss from the insured despite the fact that this date may be sooner than the day proof of loss is actually required. West Virginia Code § 33-15-4(k) allows the insured the benefit of not beginning the limitations clock until "the time written proof of loss is required to be furnished," which comports with "the vast majority of States [that] require certain insurance policies to include 3–year limitations periods that run from the date proof of loss is due." *Heimeshoff*, 134 S. Ct. at 614 (citations omitted).

The Court finds that the contractual limitations provision in the STD Policy and LTD Policy is less favorable to Plaintiff than that required by § 33-15-4(k) because the contractual language allows the limitations period to begin running sooner than permissible by statute. Within the group disability plan, proof of loss is required to be given "within 90 days after the end of the Benefit Waiting Period. If [the insured] cannot do so, [he] must give it to [Standard] as soon as reasonably possible, but not later than one year after that 90-day period." (ECF No. 1-1 at 43, 87.) While the required statutory provision does not begin the three-year limitations period

until proof of loss is required to be furnished, the contractual provision begins the three-year limitation period sooner if the insured submits proof of loss on an earlier date. (*Compare* ECF No. 1-1 at 45, 89 ("Time Limits on Legal Actions"), *with* W. Va. Code § 33-15-4(k) ("Legal Actions").) The Court will demonstrate this dichotomy through the following two examples.

The Benefit Waiting Period in the STD Policy is thirty days. (*Id.* at 37.) Therefore, under the STD Policy, proof of loss may be submitted any time between the end of the Benefit Waiting Period, which is thirty days after the disability occurs, and ninety days thereafter.[4] (*See id.* at 37, 43, 45.) Plaintiff alleges that he ceased work on May 17, 2013. (*Id.* at 5 ¶ 10.) The STD Policy Benefit Waiting Period ended thirty days later on June 16, 2013. (*See id.* at 37.) Plaintiff could have submitted his proof of loss to Standard the next day, or he could have waited and submitted it up to ninety days later on September 14, 2013. (*See id.* at 43.) Regardless of when Plaintiff actually submitted proof of loss,[5] the language provided by § 33-15-4(k) would not start the three-year clock until September 14, 2013, which is the deadline by which written proof of loss was required to be furnished. Nevertheless, if Plaintiff had submitted proof of loss as soon as he was able on June 17, 2013, for instance, the contractual limitations period would begin the three-year clock on that day instead. As such, the operation of the contractual limitation in the STD Policy is less favorable to Plaintiff than the statutory requirement and cannot be enforced.

---

[4] The policies are not clear as to whether the one-year grace period—when submission of proof of loss within ninety days of the end of the Benefit Waiting Period is not reasonably possible—is included when calculating the date by which proof of loss must be furnished for statutory purposes. (*See* ECF No. 1-1 at 43, 87.) However, neither Plaintiff nor Standard included that grace period in the calculations within their briefs, (*see* ECF No. 8 at 11; ECF No. 10 at 14–15), and the Court will not either.

[5] The Court notes that it is not clear from the face of the complaint when Plaintiff submitted written proof of loss to Standard under the group disability plan. The complaint includes his claim numbers, (*see* ECF No. 1-1 at 6 ¶¶ 18, 20), but Plaintiff does not attach a claim form or allege a date of submission. Standard asserts that Plaintiff submitted his claim form on November 17, 2013. (*See* ECF No. 6 at 8.) For this analysis, however, it is only necessary that the Court discuss what Plaintiff could have done under the policies' provisions.

Further, the Benefit Waiting Period in the LTD Policy is 180 days. (*Id.* at 76.) Therefore, under the LTD Policy, proof of loss may be submitted any time between the end of the Benefit Waiting Period, which is 180 days after the disability occurs, and ninety days thereafter. (*See id.* at 76, 87, 89.) Plaintiff alleges that he ceased work on May 17, 2013. (*Id.* at 5 ¶ 10.) The LTD Policy Benefit Waiting Period ended 180 days later on November 13, 2013.[6] (*See id.* at 76.) Plaintiff could have submitted his proof of loss to Standard the next day, or he could have waited and submitted it up to ninety days later on February 11, 2014. (*See id.* at 87.) Regardless of when Plaintiff actually submitted proof of loss, the language provided by § 33-15-4(k) would not start the three-year clock until February 11, 2014, which is when written proof of loss was required to be furnished. Nevertheless, if Plaintiff had submitted proof of loss as soon as he was able on November 14, 2013, the contractual limitations period would begin the three-year clock on that day. Accordingly, the identical contractual limitation in the LTD Policy also operates less favorably to Plaintiff than the statutory requirement and is similarly unenforceable.

The contractual limitations within the STD Policy and LTD Policy are less favorable to Plaintiff than allowed under West Virginia law, so the Court "turns to the law of West Virginia for the applicable limitations period." *See Gillespie*, 2010 WL 1050286, at *3. The Court concludes that W. Va. Code § 33-15-4(k) is the applicable statute of limitations here because that section requires insurers like Standard to include the substance of subsection 4(k) in all insurance policies, including the STD Policy and LTD Policy. *Cf. Terry v. UNUM Life Ins. Co. of Am.*, 394 F.3d 108, 109–10 (2d Cir. 2005) (finding that a New York statutory limitations provision identical to

---

[6] Plaintiff asserts in his response to the Motion to Dismiss that the LTD Policy Benefit Waiting Period ended on November 17, 2013. (*See* ECF No. 8 at 11.) However, the Benefit Waiting Period is 180 days in duration and not six months. (*See* ECF No. 1-1 at 76.) Therefore, the Benefit Waiting Period expired 180 days after May 17, 2013, or November 13, 2013.

W. Va. Code § 33-15-4(k) controlled because "the less favorable limitations period provided in [defendant-appellee]'s policy [was] not enforceable"). The cases that Plaintiff cites in support of his argument that West Virginia's ten-year statute of limitations governing general breach of contract actions applies do not deal with individual or group accident and sickness insurance, and the Court does not find them persuasive.[7] (*See* ECF No. 8 at 12 (citations omitted) (referring to W. Va. Code § 55-2-6).)

Applying the statutory limitations period provided in § 33-15-4(k), Plaintiff must have brought his breach of contract claim within "three years after the time written proof of loss [was] required to be furnished" under the STD Policy and LTD Policy. The discussion above explained that proof of loss was required to be furnished under the STD Policy by September 14, 2013. The discussion also provided that proof of loss was required to be furnished under the LTD Policy by February 11, 2014. The statute of limitations began on those two accrual dates, and Plaintiff does not allege any facts indicating that Standard concealed any facts, fraudulently or otherwise, to prevent him "from discovering or pursuing the cause of action." *See Dunn*, 689 S.E.2d at 265.

---

[7] Plaintiff first cites *State ex rel. Erie Insurance Property & Casualty Co. v. Beane* in support of his proposition, which involved an allegation of breach of contract related to a property damage claim under a "multi-peril homeowners policy." *See* No. 15–0968, 2016 WL 3392560, at *1–3 (W. Va. June 13, 2016). The court applied West Virginia's ten-year statute of limitations governing breach of contract claims because the contractual limitation violated the anti-shortening statute found in W. Va. Code § 33-6-14. *See id.* at *3. Because the insurance in *Beane* was not accident and sickness insurance, article fifteen of the State's insurance laws did not apply as it does here. Similarly, *Skiles v. Mercado* involved a breach of contract claim related to insurance the plaintiff acquired for his home inspection business. S*ee* No. 3:15-3865, 2016 WL 183921, at *1, 6 (S.D. W.Va. Jan. 14, 2016). The statutory limitations provided in W. Va. Code § 33-15-4(k) also would not apply in that case.

As the courts in *Beane* and another case that Plaintiff relies on discussed, W. Va. Code § 33-6-14 is an anti-shortening statute that prevents parties to an insurance policy from agreeing to a contractual limitations period shorter than two years. *See* 2016 WL 3392560, at *2–3; *Caldwell v. Standard Ins. Co.*, No. 2:14–cv–25242, 2015 WL 4727378, at *4 (S.D. W.Va. Aug. 10, 2015). That anti-shortening statute is not at issue here. The STD Policy and LTD Policy's limitations period provides that a lawsuit to recover under the policies may not be brought "more than three years after the earlier of" two specified events. (ECF No. 1-1 at 45, 89.) Because this limitation period is more than two years long, it is not invalidated by § 33-6-14. *Cf. Thompson v. Prudential Ins. Co. of Am.*, No. 2:14–cv–13357, 2014 WL 6886172, at *4 (S.D. W.Va. Dec. 4, 2014); *Beasley v. Allstate Ins. Co.*, 184 F. Supp. 2d 523, 525 (S.D. W.Va. 2002) ("[Section 33-6-14] simply prohibits the parties from inserting a limitations provision below the two-year floor.").

(*See also* ECF No. 1-1 at 7–8.)  The complaint also does not allege any facts that indicate that equitable tolling or another tolling doctrine should apply to Count One.

Therefore, Plaintiff must have filed his breach of contract claim related to the STD Policy by September 14, 2016, and he must have done so related to the LTD Policy by February 11, 2017. Plaintiff filed his complaint in the Kanawha County Circuit Court on February 6, 2017.  (*See* ECF No. 1-1 at 4.)  While his breach of contract claim under the STD Policy is time-barred, his breach of contract claim under the LTD Policy remains timely.  Accordingly, the Court **DISMISSES IN PART** Count One insofar as it relates to the STD Policy.  Count One remains pending as it relates to the LTD Policy.

  *B. Count Two: UTPA*

Standard contends that Plaintiff's UTPA claim is governed by the one-year statute of limitations in W. Va. Code § 55-2-12(c).  (ECF No. 6 at 3.)  Standard argues that the statute of limitations began to run on May 1, 2014, which is the day "when Standard denied his claim for disability insurance benefits."  (*Id.* at 5, 7.)  Applying West Virginia's one-year statutory limitation, Standard concludes that Plaintiff had until May 1, 2015, to file his UTPA claim.  (*Id.* at 5.)  Because this action was not filed until February 6, 2017, Standard argues that Count Two should also be dismissed with prejudice.  (*Id.* at 7.)

In Plaintiff's response, he disputes that the cause of action has accrued and argues that his UTPA claim "remains viable."  (*See* ECF No. 8 at 7.)  The basis for his argument is that the statute of limitations has been tolled due to Standard's previous and ongoing bad faith actions. (*See id.*)  Plaintiff further asserts that "[s]ince his disability remains ongoing, if a statute of

limitations did apply, it could not defeat an entire claim, since [Plaintiff] did not suffer only a single discrete loss on a specific date." (*Id.* at 8 (citation omitted).)

Standard reiterates in reply that the accrual date for Plaintiff's UTPA claim was May 1, 2014, which is when Standard denied him coverage. (*See* ECF No. 10 at 3.) Standard notes that Plaintiff "does not dispute that he knew of Standard's denial of his claim on May 1, 2014, when Standard issued the coverage decision." (*Id.* at 4.) After acknowledging Plaintiff's continuing violation argument premised on alleged past and ongoing bad faith acts, Standard contends that "[u]nder [Plaintiff]'s theory, the statute of limitations for UTPA violations never begins and never ends." (*See id.* at 5.) The company argues that Plaintiff's UTPA claim is based on a single alleged violation—Standard's denial of coverage—that was apparent to Plaintiff when he received the notice of denial on May 1, 2014. (*See id.* at 7–8.) Standard concludes by asserting that it did not fraudulently conceal any facts in an attempt to prevent Plaintiff from discovering his cause of action and that no tolling doctrines are applicable to the current matter. (*See id.* at 8–11.)

Claims brought under the UTPA have a one-year statute of limitations. *See* W. Va. Code § 55-2-12(c); *Wilt v. State Auto. Mut. Ins. Co.*, 506 S.E.2d 608, 614 (W. Va. 1998). When the cause of action is based on a single action of the defendant, the statute of limitations generally begins to run when the tort occurs.[8] *See Vorholt v. One Valley Bank*, 498 S.E.2d 241, 246 (W. Va. 1997) (citing syllabus point one from *Cart v. Marcum*, 423 S.E.2d 644, 648 (W. Va. 1992)). While the West Virginia Supreme Court of Appeals has recognized the continuing tort doctrine as an exception to the general accrual rule, the doctrine has been found not to apply to "continued

---

[8] Plaintiff's UTPA claim is considered a tort action for this purpose. *See Kenney v. Indep. Order of Foresters*, 744 F.3d 901, 907 (4th Cir. 2014) (citing *Wilt*, 506 S.E.2d at 610) (categorizing the plaintiff's action under the UTPA as one in tort as opposed to contract because the UTPA allows attorney's fees and punitive damages, which "are not available in contract cases").

14

refusals by [a plaintiff's] insurer to provide coverage under an insurance policy." *See Elliot v. AAA Ins.*, No. 5:15CV146, 2016 WL 2766651, at *3 (S.D. W.Va. May 12, 2016) (citing *Noland v. Va. Ins. Reciprocal*, 686 S.E.2d 23, 38 (W. Va. 2009) (internal citation omitted)). If necessary, courts use the following to determine whether the discovery rule applies:

> In tort actions . . . under the discovery rule the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury.

*Gaither v. City Hosp., Inc.*, 487 S.E.2d 901, 906 (W. Va. 1997). Courts liberally construe statutes of limitations and will enforce them unless the plaintiff "brings himself strictly within some exception." *See Johnson v. Nedeff*, 452 S.E.2d 63, 66 (W. Va. 1994) (quoting *Humble Oil & Refining Co. v. Lane*, 165 S.E.2d 379, 383 (W. Va. 1969)).

Here, Plaintiff's UTPA claim is subject to a one-year statute of limitations, which the parties do not appear to contest. *See* W. Va. Code § 55-2-12(c); *Wilt*, 506 S.E.2d at 614. (*See also* ECF No. 8 at 7 ("Here, [Plaintiff] disputes [Standard's] interpretation of when the statute of limitations begins to run.").) According to Plaintiff's complaint, the UTPA claim is a result of Standard's denial of his claim for disability benefits under the STD Policy and LTD Policy. (*See* ECF No. 1-1 at 9 ¶¶ 44–47.) Plaintiff alleges that Standard denied his claim for disability benefits on May 1, 2014, and the Court finds that the cause of action accrued on that day.[9] (*See id.* at 7 ¶

---

[9] The Court notes that Plaintiff claims in his response that "[t]he nature of [his] injury being one of ongoing disability also reasons against application of a statute of limitations to defeat his claim, as such statutes are designed to prevent stale claims based on a single date of loss." (ECF No. 8 at 7.) No matter how Plaintiff words it, though, his cause of action under the UTPA and request for various types of damages all stem from Standard's denial of his claim for disability benefits under the group disability plan. The Court agrees with Standard that Plaintiff's "perpetual continuing violation theory" appears to stand in contrast to authority interpreting the statute of limitations governing UTPA claims. (*See* ECF No. 10 at 5–6 (citing *Elliot*, 2016 WL 2766651, at *4; *Noland*, 686 S.E.2d at 38).)

28.) *Cf. Vorholt*, 498 S.E.2d at 246. An extensive discussion of the discovery rule is unnecessary in this case because it is clear from the face of Plaintiff's complaint that he was aware of the denial of coverage on May 1, 2014, and admits this knowledge in his response to the motion.[10] (*See* ECF No. 1-1 at 7 ¶ 28; ECF No. 8 at 5–6.) Thus, the statute of limitations began to run for Plaintiff's UTPA claim on May 1, 2014.

Plaintiff fares no better in the final two steps of the *Dunn* analysis. While Plaintiff does not benefit from the discovery rule, the complaint does not allege any facts indicating that Standard concealed any facts, fraudulently or otherwise, to prevent him "from discovering or pursuing the cause of action." *See Dunn*, 689 S.E.2d at 265. (*See also* ECF No. 1-1 at 7–9.) If the Court determines that Plaintiff fits within an exception to the statute of limitations, such as equitable estoppel, the UTPA claim may still be ripe. *See Bradley v. Williams*, 465 S.E.2d 180, 184–85 (W. Va. 1995) (noting that the doctrine of equitable estoppel applies when "a party is induced to act or to refrain from acting to her detriment because of her reasonable reliance on another party's misrepresentation or concealment of a material fact"); *Nedeff*, 452 S.E.2d at 66. Plaintiff seems partially to rely on the last step of the analysis, arguing that "Standard did not advise [Plaintiff] of his right to seek judicial review" and that "Standard failed to advise [Plaintiff] that if he pursued

---

[10] In Plaintiff's response to the motion, he states the following:

> The discovery rule may apply during the Court's 5-step analysis of the application of a statute of limitations to explore exceptions that toll the statute of limitations. Discovery has not yet been conducted . . . In fairness, [Plaintiff] must be allowed to seek discovery, a right not available to him during Standard's handling of his claims. He may find information while conducting Rule 30(b) depositions that would reveal the applicability of a tolling doctrine, such as fraud or equitable estoppel, which will be impossible for him to learn of without discovery.

(ECF No. 8 at 8.) Plaintiff misinterprets the discovery rule, which tolls the statute of limitations until a plaintiff becomes aware of the cause of action. Plaintiff knew of the cause of action here when he received the denial letter from Standard on May 1, 2014. (*See* ECF No. 1-1 at 7 ¶ 28.) The discovery rule does not purport to allow Plaintiff to use the discovery phase of litigation to search for a reason to toll the applicable statute of limitations.

an appeal with Standard, his time to file suit would run out simultaneously." (*See* ECF No. 8 at 7.) As another district court within the Fourth Circuit noted in *Parsons v. Standard Insurance Co.*, "[a]n insured's appeal is simply a hope that the insurer will reconsider the decision it has already made. The mere potential that an insurer might reverse its position cannot qualify as an affirmative act sufficient to induce a plaintiff to forego filing suit, and it certainly is not a promise that it will not plead the statute of limitations." 185 F. Supp. 3d 909, 915 (N.D. W.Va. May 5, 2016). The law requires no affirmative act of Standard to "advise" Plaintiff on any statute of limitations when it denies coverage under its policies. Beyond these statements, neither the complaint nor Plaintiff's response appears to allege any other facts that persuade this Court to apply equitable tolling to Count Two.

It is clear from the face of the complaint that Plaintiff must have filed his UTPA action by May 1, 2015, or one year after the statute of limitations began to run on May 1, 2014, to satisfy the statute of limitations applicable to Count Two. This action was not filed until February 6, 2017. (*See* ECF No. 1-1 at 4.) Thus, the Court **DISMISSES** Count Two as time-barred.

IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** the Motion to Dismiss insofar as it seeks dismissal of Count One relating to the STD Policy and Count Two in its entirety and **DENIES IN PART** the motion insofar as it seeks dismissal of Count One relating to the LTD Policy. (ECF No. 5.) The breach of contract claim associated with the LTD Policy remains pending.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

        ENTER:       June 6, 2017

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE